IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TANABE PHARMA CORPORATION (F/K/A MITSUBISHI TANABE PHARMA CORPORATION),

Plaintiff,

v.

AZURITY PHARMACEUTICALS, INC., AZURITY PHARMACEUTICALS INDIA LLP, and SLAYBACK PHARMA LLC,

Defendants.

C.A. No. ___________

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Tanabe Pharma Corporation f/k/a Mitsubishi Tanabe Pharma Corporation ("TPC" or "Plaintiff"), by its undersigned attorneys, brings this action for patent infringement against Defendants Azurity Pharmaceuticals, Inc. ("Azurity"), Azurity Pharmaceuticals India LLP ("Azurity India"), and Slayback Pharma LLC ("Slayback") and hereby alleges, on knowledge as to its own actions, and on information and belief as to all other matters, as follows:

**NATURE OF THE CASE**

1. This is an action for infringement by Defendants, under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.,* of TPC's United States Patent Nos. 10,987,341 ("the '341 patent"), 11,241,416 ("the '416 patent"), 11,478,450 ("the '450 patent"), 11,826,352 ("the '352 patent"), 11,957,660 ("the '660 patent"), 12,194,025 ("the '025 patent"), 12,285,409 ("the '409 patent"), 12,310,946 ("the '946 patent"), and 12,478,611 ("the '611 patent") (collectively, the "Patents-in-Suit") under the United States Patent Laws, 35 U.S.C. §§ 100 *et seq*., the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*., and as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

2. This action arises from Defendants' submission of New Drug Application ("NDA") No. 221059, pursuant to Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 355(b)(2), seeking an abbreviated approval by the U.S. Food and Drug Administration ("FDA") to engage in the commercial manufacture, use, sale, offer for sale and/or importation of their edaravone oral formulation "105 mg / 5 mL," a generic version of TPC's RADICAVA ORS®, prior to the expiration of the Patents-in-Suit.

**AMYOTROPHIC LATERAL SCLEROSIS**

3. Amyotrophic lateral sclerosis ("ALS"), also known as Lou Gehrig's disease, is a devastating and fatal neurodegenerative disease that causes motor neurons – nerve cells in the brain and spinal cord – to progressively decay and die. When this happens, the brain's ability to control muscle movement is progressively lost as the patient loses the ability to speak, eat, move and eventually breathe. The causes of ALS are not known. Once diagnosed with ALS, patients, on average, live for 3 to 5 additional years, although their quality of life deteriorates substantially throughout their few remaining years. There is no cure for ALS.[1]

4. The care of an ALS patient is burdensome, requiring a team of medical professionals, specialized equipment, and constant attention of a caregiver. Caregivers are often relatives who have forgone their occupations in order to care for the daily activities of the ALS patient. The demands of caregiving for an ALS patient take a toll on the health and finances of the caregivers as well. Of the neurodegenerative diseases, ALS is considered one of the most expensive and burdensome, imposing significant direct and indirect costs on the ALS patient, the

[1] Information in this paragraph is sourced from www.als.org and the National Institute of Health's "Amyotrophic Lateral Sclerosis fact sheet" (January 2017), available from https://www.ninds.nih.gov/sites/default/files/migrate-documents/ALS_FactSheet-E_508C.pdf and downloaded on April 22, 2024.

caregivers, medical professionals, and the healthcare industry.

5. Since 1980, although over one hundred (100+) clinical trials with various compounds have been conducted and published, only four active pharmaceutical ingredients ("APIs") have been approved by the FDA for the treatment of ALS. RELYVRIO®, a drug using one of those APIs, was subsequently withdrawn from the market due to a failed clinical study. TPC's RADICAVA ORS® is one of the few drug formulations containing one of the remaining three approved APIs for the treatment of ALS.

**RADICAVA ORS®**

6. TPC holds an exclusive license to NDA No. 215446 from K.K. BCJ-94, the parent company of TPC. On May 12, 2022, the FDA approved NDA No. 215446, thereby approving the first oral formulation containing the edaravone API, available in the United States and marketed and sold under the trade name RADICAVA ORS®.

7. TPC invested hundreds of millions of dollars in research and development demonstrating the efficacy and safety of RADICAVA ORS® for the treatment for ALS.

8. Although there is no cure for ALS, RADICAVA ORS® helps slow the progression (*i.e.*, loss of physical function) of the disease in ALS patients by approximately thirty-three percent (33%) as compared to a placebo over the same six-month period. Unlike the prior RADICAVA® intravenous ("IV") formulation, RADICAVA ORS® can be administered by the patient or informal caregivers in a home setting, either orally or via a feeding tube, and in only a few minutes. There is no need to transport the patient to a healthcare facility for IV injection of RADICAVA®.

9. On March 28, 2024, the FDA granted seven years of Orphan Drug Exclusivity ("ODE") for RADICAVA ORS® for the treatment of ALS based upon the FDA's assessment that RADICAVA ORS® constitutes a major contribution to patient care for people living with ALS

because it provides patients the clinically superior option of an oral route of administration, reducing the burden patients faced with IV administration of the previously approved RADICAVA® formulation.

10. Pursuant to 21 C.F.R. § 316.31 relating to ODE, the FDA may not approve another application "for the same drug for the same use or indication before the expiration of 7 years from the date of such approval."

11. The ODE for RADICAVA ORS® expires on May 12, 2029.

12. Pursuant to 21 U.S.C. § 355(b)(l)(viii), the Patents-in-Suit are listed in the Approved Drug Products With Therapeutic Equivalence Evaluations ("Orange Book") in connection with NDA No. 215446 for RADICAVA ORS®.

## THE PARTIES

13. TPC is a corporation organized and existing under the laws of Japan and having its corporate headquarters at 3-2-10, Dosho-machi, Chuo-ku, Osaka, 541-8505, Japan. TPC is one of the oldest pharmaceutical companies in the world. It is a global research and development pharmaceutical company that has consistently dedicated itself to developing innovative therapies for some of the most rare and devastating conditions affecting humanity, including RADICAVA ORS®.

14. On information and belief, Defendant Azurity is a company organized under the laws of Delaware, having a place of business at 8 Cabot Road, Suite 2000, Woburn MA, 01801.

15. On information and belief, Defendant Azurity India is a company organized under the laws of India, having a principal place of business at 310, 3rd Floor, Manjeera Trinity Corporate, JNTU – Hitech City Road, KPHB, Phase 3, Kukatpally Hyderabad, Telangana, 500072, India. On information and belief, Azurity India manufactures, distributes, and/or imports generic

drugs for sale throughout the United States, including in this judicial district, at the direction, under the control, and for the direct benefit of its parent company, Azurity. On information and belief, Azurity India is a wholly owned subsidiary of Azurity.

16. On information and belief, Defendant Slayback is a company organized under the laws of Delaware, having a place of business at 301 Carnegie Center, Suite 303, Princeton, New Jersey 08540. On information and belief, Slayback manufactures, distributes and/or imports generic drugs for sale throughout the United States, including in this judicial district, at the direction, under the control, and for the direct benefit of its parent company, Azurity.

17. On information and belief, on September 27, 2023, Azurity announced that it acquired Slayback, and accordingly, on information and belief, Slayback is a wholly owned subsidiary of Azurity. In Azurity's press release announcing the acquisition of Slayback, Azurity's CEO, Richard Blackburn, stated: "We will bring the commercial expertise of Azurity to Slayback's pipeline and look forward to introducing an even wider range of dose-forms and formulations to meet a broader set of patient needs." In addition, Jeff Edwards, an alleged "Partner at QHP Capital, the majority owner of Azurity," had stated: "The acquisition of Slayback accelerates Azurity's strategic growth plan and enhances our ability to launch multiple innovative new drug products into the market every year to serve overlooked patients." *See* Azurity's press release of September 27, 2023 (https://azurity.com/azurity-pharmaceuticals-acquires-slayback-pharma/) (last accessed Jan. 9, 2026).

18. On information and belief, Slayback, now part of Azurity, holds itself and Azurity out to the public as a single company.

19. On information and belief, as of the filing of this complaint, when calling the publicly listed phone number for Slayback, the following automated message plays: "Welcome to

Slayback Pharma LLC and Azurity Pharmaceuticals Incorporated, a company serving overlooked patients. We are not a medical facility. If you have questions regarding our products or want to report an adverse event, please hang up and call our customer service number, 844-566-2505."

20. On information and belief, Slayback's web presence (slayback-pharma.com) now routes users to Azurity's website, evidencing Azurity's control over Slayback's public-facing communications and branding.

21. On information and belief, Defendants Azurity, Azurity India, and Slayback operate as integrated units of the same corporate group, acting collaboratively and as agents or alter egos of one another in the development, regulatory submission, and commercialization of pharmaceutical products.

22. On information and belief, Defendants are in the business of, *inter alia*, directly or indirectly, developing, manufacturing, marketing, distributing, selling, offering for sale, and/or importing generic versions of branded pharmaceutical products throughout the world, including the United States and this judicial district.

**DEFENDANTS' ABBREVIATED 505(b)(2) NDA AND PROPOSED PRODUCT**

23. On information and belief, Azurity is the holder of 505(b)(2) NDA No. 221059, seeking FDA approval to market an edaravone oral formulation "105 mg / 5 mL," an edaravone product for the treatment of ALS, relying upon TPC's RADICAVA ORS® as the Reference Label Drug ("RLD") and the studies disclosed in TPC's NDA No. 215446 for RADICAVA ORS® in seeking abbreviated FDA approval for 505(b)(2) NDA No. 221059 before expiry of Patents-in-suit claiming RADICAVA ORS®.

24. On information and belief, Defendants caused 505(b)(2) NDA No. 221059 to be submitted to FDA and seek FDA approval of 505(b)(2) NDA No. 221059 before expiry of Patents-

in-suit claiming RADICAVA ORS®.

25. On information and belief, Defendants seek FDA approval of NDA No. 221059 to engage in the commercial manufacture, use, sale, offer for sale and/or importation of its proposed edaravone product before expiry of Patents-in-suit claiming RADICAVA ORS®.

26. On information and belief, the FDA has not approved NDA No. 221059.

27. On information and belief, prior to the acquisition of Slayback in September 2023, Azurity lacked patents and technical know-how directed to ALS treatment and edaravone formulations. On information and belief, Slayback had been actively developing such formulations, including subject matter described in U.S. Patent Nos. 12,343,330 ("the '330 patent") and 12,491,178 ("the '178 patent"), both titled "Stable Pharmaceutical Compositions of Edaravone," assigned on their face to Slayback, and claiming priority to Indian Provisional Patent Application No. 202341010407, filed February 16, 2023. On information and belief, the '330 and '178 patents are now assigned to Azurity.

28. On information and belief, Defendants acted collaboratively and in concert in the preparation and submission of 505(b)(2) NDA No. 221059, leveraging Slayback's R&D knowledge and personnel, including Ajay Singh (Slayback's Founder and CEO, now Azurity's Chief Scientific Officer) and Praveen Subbappa (named inventor on Slayback's '330 and '178 patents and now Alliance Manager at Azurity with involvement in regulatory matters, *see* LinkedIn profile for Praveen Subbappa, last accessed on Jan. 7, 2026 (https://www.linkedin.com/in/praveen-subbappa-387163). On information and belief, Slayback has provided substantial technical information and regulatory interaction supporting 505(b)(2) NDA No. 221059.

29. On information and belief, the subject matter disclosed in Slayback's '330 and '178 patents tracks Defendants' proposed edaravone product that is the subject of 505(b)(2) NDA No.

221059, which is also consistent with Defendants' description of their proposed oral edaravone formulation product in Defendants' notification of 505(b)(2) NDA No. 221059 and the certification under 21 U.S.C. § 355(b)(2)(A)(iv) of the FDCA ("Notice Letter"), received by TPC on December 8, 2025. For example, Defendants characterize their own proposed edaravone product as allegedly a solution in their Notice Letter, and the oral edaravone formulations disclosed in Slayback's '330 and '178 patents are said to be edaravone solutions.

30. On information and belief, Slayback is integral to Azurity's edaravone program including Defendants' proposed edaravone product that is the subject of 505(b)(2) NDA No. 221059, and Slayback functions as Azurity's agent for the edaravone formulation in 505(b)(2) NDA No. 221059 for which Azurity seeks approval before the expiry of Patents-in-suit.

31. On information and belief, after obtaining FDA approval of 505(b)(2) NDA No. 221059, Defendants intend to distribute, offer to sell, and sell the proposed infringing products described in 505(b)(2) NDA No. 221059 throughout the United States, including this judicial district, and/or import such products into the United States, including into this judicial district.

32. On information and belief, Defendants sent TPC the Notice Letter, purporting to include "Detailed Statement of the Factual and Legal Bases for Azurity's Paragraph IV Certification Concerning United States Patent Nos. 10,987,341; 11,241,416; 11,478,450; 11,826,352; 11,957,660; 12,285,409," dated December 5, 2025, providing Defendants' bases for alleging noninfringement of the '341, '416, '450, '352, '660, and '409 patents.

33. To date, TPC has not received samples of Defendants' infringing edaravone product or the edaravone API used by Defendants.

34. Counsel for TPC, pursuant to an agreed Offer of Confidential Access, obtained and reviewed portions of 505(b)(2) NDA No. 221059. Based on the Notice Letter, the materials

provided by Defendants to TPC's counsel, and publicly available information, Defendants have infringed at least one claim of each Patent-in-Suit by filing 505(b)(2) NDA No. 221059 Application with a Paragraph IV Certification. Moreover, if Defendants are permitted to manufacture, market, and sell their proposed edaravone product subject to 505(b)(2) NDA No. 221059, such conduct would infringe at least one claim of each Patent-in-Suit. At a minimum, the information reviewed does not support Defendants' representation that their proposed edaravone product subject to 505(b)(2) NDA No. 221059 will not infringe the claims of the Patents-in-Suit.

35. This action is being brought within 45 days of TPC's receipt on December 8, 2025, of the Notice Letter, pursuant to 21 U.S.C. § 355(c)(3)(C). Accordingly, TPC is entitled to a thirty (30) month stay of FDA approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii) and 21 U.S.C. § 355(j)(5)(F)(ii).

**JURISDICTION AND VENUE**

36. TPC restates, realleges, and incorporates by reference paragraphs 1–35 as if fully set forth herein.

37. This action arises under the Patent Laws of the United States and the Food and Drug Laws of the United States, Titles 35 and 21, United States Code.

38. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a).

39. This Court may exercise personal jurisdiction over Azurity because, on information and belief, Azurity is in the business of manufacturing, marketing, importing and selling pharmaceutical drug products, including generic drug products. On information and belief, Azurity directly, or indirectly, develops, manufactures, markets and sells generic drugs throughout the United States and in this judicial district. On information and belief, Azurity purposefully has

conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Defendants' generic products.

40. This Court may exercise personal jurisdiction over Azurity India because, on information and belief, Azurity India is an Indian company and is in the business of manufacturing, marketing, importing and selling pharmaceutical drug products, including generic drug products. On information and belief, Azurity India directly, or indirectly, develops, manufactures, markets and sells generic drugs throughout the United States and in this judicial district. On information and belief, Azurity India purposefully has conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Defendants' generic products.

41. This Court may exercise jurisdiction over Slayback because, on information and belief, Slayback is in the business of manufacturing, marketing, importing and selling pharmaceutical drug products, including generic drug products. On information and belief, Slayback directly, or indirectly, develops, manufactures, markets and sells generic drugs throughout the United States and in this judicial district. On information and belief, Slayback purposefully has conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Defendants' generic products.

42. On information and belief, as described in Defendants' Notice Letter, Defendants caused 505(b)(2) NDA No. 221059 to be submitted to the FDA to seek FDA approval of 505(b)(2) NDA No. 221059 prior to the expiration of the Patents-in-Suit listed in the Orange Book for RADICAVA ORS®.

43. This Court also has personal jurisdiction over Defendants because Defendants have committed, aided, abetted and participated and/or will commit, will aid, will abet and/or will participate in the commission of acts of patent infringement, including acts in this judicial district,

which have led to foreseeable harm and injury to TPC in this judicial district. For example, on information and belief, Defendants purposefully availed themselves of this forum through coordinated R&D, regulatory submission activities, and commercialization for Defendants' proposed edaravone product that is the subject of 505(b)(2) NDA No. 221059.

44. Venue is proper, pursuant to 28 U.S.C. §§ 1391 and/or 1400, in this Court for Azurity for reasons stated above and, *inter alia*, on information and belief, Azurity is incorporated in Delaware.

45. Venue and/or jurisdiction are proper in this Court for Azurity also because Azurity India and Slayback, based on the reasons provided above and on information and belief, themselves and/or in cooperation with Azurity and/or as agents or alter egos of Azurity, have submitted the 505(b)(2) NDA No. 221059 with the intent of marketing Defendants' proposed edaravone product in this judicial district before expiration of the Patents-in-Suit.

46. Venue is proper, pursuant to 28 U.S.C. §§ 1391 and/or 1400, in this Court for Azurity India for reasons stated above and, *inter alia*, because Azurity India is a foreign corporation and may be sued in any judicial district in the United States.

47. Venue is proper, pursuant to 28 U.S.C. §§ 1391 and/or 1400, in this Court for Slayback for reasons stated above and, *inter alia*, on information and belief, Slayback is incorporated in Delaware.

48. On January 16, 2026, TPC filed a complaint against Defendants in the United States District Court for the District of New Jersey (the "New Jersey Action"). The complaint in the New Jersey Action alleged the same acts of infringement as the present complaint. A copy of that complaint is attached as Exhibit A.

49. Pursuant to Local Civil Rule 11.2 of that Court, the New Jersey Action was

designated as related to six other Hatch-Waxman litigations also involving the Radicava ORS® product, the same product here at issue, and the same Patents-in-Suit.

50. Based on Defendants' continuous and systematic business contacts with New Jersey, Defendants should be subject to personal jurisdiction in the District of New Jersey; however, in case Defendants may assert that they are not subject to such jurisdiction, TPC is filing the instant complaint, which has identical infringement claims against Defendants as the New Jersey Action, a so-called Hatch-Waxman "protective suit," to preserve TPC's rights.

## THE PATENTS-IN-SUIT

51. TPC owns the '341 patent, which was duly and legally issued on April 27, 2021, and is entitled "Edaravone Suspension for Oral Administration." A copy of the '341 patent is attached as Exhibit B.

52. TPC owns the '416 patent, which was duly and legally issued on February 8, 2022, and is entitled "Edaravone Suspension for Oral Administration." A copy of the '416 patent is attached as Exhibit C.

53. TPC owns the '450 patent, which was duly and legally issued on October 25, 2022, and is entitled "Edaravone Suspension for Oral Administration." A copy of the '450 patent is attached as Exhibit D.

54. TPC owns the '352 patent, which was duly and legally issued on November 28, 2023, and is entitled "Edaravone Suspension for Oral Administration." A copy of the '352 patent is attached as Exhibit E.

55. TPC owns the '660 patent, which was duly and legally issued on April 16, 2024, and is entitled "Edaravone Suspension for Oral Administration." A copy of the '660 patent is attached as Exhibit F.

56. TPC owns the ’025 patent, which was duly and legally issued on January 14, 2025, and is entitled “Pharmaceutical composition for oral administration of edaravone and method of administering same.” A copy of the ’025 patent is attached as Exhibit G.

57. TPC owns the ’409 patent, which was duly and legally issued on April 29, 2025, and is entitled “Edaravone Suspension for Oral Administration.” A copy of the ’409 patent is attached as Exhibit H.

58. TPC owns the ’946 patent, which was duly and legally issued on May 27, 2025, and is entitled “Pharmaceutical composition for oral administration of edaravone and method of administering same.” A copy of the ’946 patent is attached as Exhibit I.

59. TPC owns the ’611 patent, which was duly and legally issued on November 25, 2025, and is entitled “Pharmaceutical composition for oral administration of edaravone and method of administering same.” A copy of the ’611 patent is attached as Exhibit J.

## CLAIMS FOR RELIEF

## COUNT 1: INFRINGEMENT OF THE ’341 PATENT

60. TPC restates, realleges, and incorporates by reference paragraphs 1–59 as if fully set forth herein.

61. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants’ proposed edaravone product in the United States prior to the expiration of the ’341 patent.

62. On information and belief, Defendants’ proposed edaravone product infringes, literally and/or under the doctrine of equivalents, one or more claims of the ’341 patent, including at least Independent Claim 1 of the ’341 patent. For example, on information and belief, differences, if any, between the features of Defendants’ proposed edaravone product and the claims

of the ’341 patent are insubstantial, and Defendants’ proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the products claimed in the ’341 patent. Further, on information and belief, Defendants’ proposed edaravone product is, at a minimum, a partial suspension requiring a crystallization inhibitor, as evidenced by, *inter alia*, U.S. Patent Nos. 12,343,330 and/or 12,491,178.

63. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the ’341 patent by submitting 505(b)(2) NDA No. 221059 with Defendants’ Notice Letter, seeking approval of Defendants’ proposed edaravone product prior to the expiration of the ’341 patent listed in the FDA Orange Book.

64. On information and belief, Defendants intend to and will engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants’ proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

65. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants’ proposed edaravone product in the United States prior to the expiration of the ’341 patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’341 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

66. Defendants had actual and constructive notice of the ’341 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants’ proposed edaravone product.

67. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the ’341 patent or the later expiration of any patent term extension or exclusivity for the ’341 patent to which TPC is or becomes entitled.

68. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants' proposed edaravone product within the United States, or import Defendants' proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the '341 patent under 35 U.S.C. §§ 271(a), (b) and (c).

69. TPC will be irreparably harmed if Defendants are not enjoined from Defendants' activities infringing the '341 patent. TPC does not have an adequate remedy and an award of damages would not make TPC whole.

**COUNT 2: INFRINGEMENT OF THE '416 PATENT**

70. TPC restates, realleges, and incorporates by reference paragraphs 1–69 as if fully set forth herein.

71. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants' proposed edaravone product, prior to the expiration of the '416 patent.

72. On information and belief, Defendants' proposed edaravone product infringes, literally and/or under the doctrine of equivalents, one or more claims of the '416 patent, including at least Independent Claim 1 of the '416 patent. For example, on information and belief, differences, if any, between the features of Defendants' proposed edaravone product and the claims of the '416 patent are insubstantial, and Defendants' proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the products claimed in the '416 patent. Further, on information and belief, Defendants' proposed edaravone product is, at a minimum, a partial suspension requiring a crystallization inhibitor, as evidenced by, *inter alia*, U.S. Patent Nos. 12,343,330 and/or 12,491,178.

73. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the '416 patent by submitting 505(b)(2) NDA No. 221059 with Defendants' Notice Letter, seeking approval of Defendants' proposed edaravone product prior to the expiration of the '416 patent listed in the FDA Orange Book.

74. On information and belief, Defendants intend to and will engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants' proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

75. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants' proposed edaravone product in the United States prior to the expiration of the '416 patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the '416 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

76. Defendants had actual and constructive notice of the '416 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants' proposed edaravone product.

77. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the '416 patent or the later expiration of any patent term extension or exclusivity for the '416 patent to which TPC is or becomes entitled.

78. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants' proposed edaravone product within the United States, or import Defendants' proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the '416 patent under 35 U.S.C. §§ 271(a), (b) and (c).

79. TPC will be irreparably harmed if Defendants are not enjoined from Defendants' activities infringing the '416 patent. TPC does not have an adequate remedy at law and an award of damages would not make TPC whole.

**COUNT 3: INFRINGEMENT OF THE '450 PATENT**

80. TPC restates, realleges, and incorporates by reference paragraphs 1–79 as if fully set forth herein.

81. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants' proposed edaravone product, prior to the expiration of the '450 patent.

82. On information and belief, Defendants' proposed edaravone product infringes, literally and/or under the doctrine of equivalents, one or more claims of the '450 patent, including at least Independent Claim 1 of the '450 patent. For example, on information and belief, differences, if any, between the features of Defendants' proposed edaravone product and the claims of the '450 patent are insubstantial, and Defendants' proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the products claimed in the '450 patent. Further, on information and belief, Defendants' proposed edaravone product is, at a minimum, a partial suspension requiring a crystallization inhibitor, as evidenced by, *inter alia*, U.S. Patent Nos. 12,343,330 and/or 12,491,178.

83. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the '450 patent by submitting 505(b)(2) NDA No. 221059 with Defendants' Notice Letter, seeking approval of Defendants' proposed edaravone product prior to the expiration of the '450 patent listed in the FDA Orange Book.

84. On information and belief, Defendants intend to and will engage in the commercial

manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants' proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

85. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants' proposed edaravone product in the United States prior to the expiration of the '450 patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the '450 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

86. Defendants had actual and constructive notice of the '450 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants' proposed edaravone product.

87. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the '450 patent or the later expiration of any patent term extension or exclusivity for the '450 patent to which TPC is or becomes entitled.

88. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants' proposed edaravone product within the United States, or import Defendants' proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the '450 patent under 35 U.S.C. §§ 271(a), (b) and (c).

89. TPC will be irreparably harmed if Defendants are not enjoined from Defendants' activities infringing the '450 patent. TPC does not have an adequate remedy at law and an award of damages would not make TPC whole.

**COUNT 4: INFRINGEMENT OF THE '352 PATENT**

90. TPC restates, realleges, and incorporates by reference paragraphs 1–89 as if fully

set forth herein.

91. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants' proposed edaravone product, prior to the expiration of the '352 patent.

92. On information and belief, Defendants' proposed edaravone product infringes, literally and/or under the doctrine of equivalents, one or more claims of the '352 patent, including at least Independent Claim 1 of the '352 patent. For example, on information and belief, differences, if any, between the features of Defendants' proposed edaravone product and the claims of the '352 patent are insubstantial, and Defendants' proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the products claimed in the '352 patent. Further, on information and belief, Defendants' proposed edaravone product is, at a minimum, a partial suspension requiring a crystallization inhibitor, as evidenced by, *inter alia*, U.S. Patent Nos. 12,343,330 and/or 12,491,178.

93. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the '352 patent by submitting 505(b)(2) NDA No 221059 with Defendants' Notice Letter, seeking approval of Defendants' proposed edaravone product prior to the expiration of the '352 patent listed in the FDA Orange Book.

94. On information and belief, Defendants intend to and will engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants' proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

95. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants' proposed edaravone product in the United States prior to the expiration of the '352

patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’352 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

96. Defendants had actual and constructive notice of the ’352 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants’ proposed edaravone product.

97. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the ’352 patent or the later expiration of any patent term extension or exclusivity for the ’352 patent to which TPC is or becomes entitled.

98. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants’ proposed edaravone product within the United States, or import Defendants’ proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the ’352 patent under 35 U.S.C. §§ 271(a), (b) and (c).

99. TPC will be irreparably harmed if Defendants are not enjoined from Defendants’ activities infringing the ’352 patent. TPC does not have an adequate remedy at law and an award of damages would not make TPC whole.

**COUNT 5: INFRINGEMENT OF THE ’660 PATENT**

100. TPC restates, realleges, and incorporates by reference paragraphs 1–99 as if fully set forth herein.

101. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants’ proposed edaravone product, prior to the expiration of the ’660 patent.

102. On information and belief, Defendants’ proposed edaravone product infringes,

literally and/or under the doctrine of equivalents, one or more claims of the ’660 patent, including at least Independent Claim 1 of the ’660 patent. For example, on information and belief, differences, if any, between the features of Defendants’ proposed edaravone product and the claims of the ’660 patent are insubstantial, and Defendants’ proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the products claimed in the ’660 patent. Further, on information and belief, Defendants’ proposed edaravone product is, at a minimum, a partial suspension requiring a crystallization inhibitor, as evidenced by, *inter alia*, U.S. Patent Nos. 12,343,330 and/or 12,491,178.

103. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the ’660 patent by submitting 505(b)(2) NDA No. 221059 with Defendants’ Notice Letter, seeking approval of Defendants’ proposed edaravone product prior to the expiration of the ’660 patent listed in the FDA Orange Book.

104. On information and belief, Defendants intend to and will engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants’ proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

105. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants’ proposed edaravone product in the United States prior to the expiration of the ’660 patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’660 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

106. Defendants had actual and constructive notice of the ’660 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants’ proposed edaravone product.

107. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the

effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the ’660 patent or the later expiration of any patent term extension or exclusivity for the ’660 patent to which TPC is or becomes entitled.

108. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants’ proposed edaravone product within the United States, or import Defendants’ proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the ’660 patent under 35 U.S.C. §§ 271(a), (b) and (c).

109. TPC will be irreparably harmed if Defendants are not enjoined from Defendants’ activities infringing the ’660 patent. TPC does not have an adequate remedy at law and an award of damages would not make TPC whole.

**COUNT 6: INFRINGEMENT OF THE ’025 PATENT**

110. TPC restates, realleges, and incorporates by reference paragraphs 1–109 as if fully set forth herein.

111. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants’ proposed edaravone product, prior to the expiration of the ’025 patent.

112. On information and belief, Defendants’ proposed edaravone product infringes, literally and/or under the doctrine of equivalents, one or more claims of the ’025 patent, including at least Independent Claim 1 of the ’025 patent. For example, on information and belief, differences, if any, between the features of Defendants’ proposed edaravone product and the claims of the ’025 patent are insubstantial, and Defendants’ proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the

products claimed in the ’025 patent.

113. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the ’025 patent by submitting 505(b)(2) NDA No. 221059 seeking approval of Defendants’ proposed edaravone product prior to the expiration of the ’025 patent listed in the FDA Orange Book.

114. On information and belief, Defendants intend to and will engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants’ proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

115. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants’ proposed edaravone product in the United States prior to the expiration of the ’025 patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’025 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

116. Defendants had actual and constructive notice of the ’025 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants’ proposed edaravone product.

117. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the ’025 patent or the later expiration of any patent term extension or exclusivity for the ’025 patent to which TPC is or becomes entitled.

118. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants’ proposed edaravone product within the United States, or import Defendants’ proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the ’025 patent under 35 U.S.C.

§§ 271(a), (b) and (c).

119. TPC will be irreparably harmed if Defendants are not enjoined from Defendants' activities infringing the '025 patent. TPC does not have an adequate remedy at law and an award of damages would not make TPC whole.

**COUNT 7: INFRINGEMENT OF THE '409 PATENT**

120. TPC restates, realleges, and incorporates by reference paragraphs 1–119 as if fully set forth herein.

121. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants' proposed edaravone product, prior to the expiration of the '409 patent.

122. On information and belief, Defendants' proposed edaravone product infringes, literally and/or under the doctrine of equivalents, one or more claims of the '409 patent, including at least Independent Claim 1 of the '409 patent. For example, on information and belief, differences, if any, between the features of Defendants' proposed edaravone product and the claims of the '409 patent are insubstantial, and Defendants' proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the products claimed in the '409 patent. Further, on information and belief, Defendants' proposed edaravone product is, at a minimum, a partial suspension requiring a crystallization inhibitor, as evidenced by, *inter alia*, U.S. Patent Nos. 12,343,330 and/or 12,491,178.

123. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the '409 patent by submitting 505(b)(2) NDA No. 221059 seeking approval of Defendants' proposed edaravone product prior to the expiration of the '409 patent listed in the FDA Orange Book.

124. On information and belief, Defendants intend to and will engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants' proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

125. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants' proposed edaravone product in the United States prior to the expiration of the '409 patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the '409 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

126. Defendants had actual and constructive notice of the '409 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants' proposed edaravone product.

127. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the '409 patent or the later expiration of any patent term extension or exclusivity for the '409 patent to which TPC is or becomes entitled.

128. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants' proposed edaravone product within the United States, or import Defendants' proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the '409 patent under 35 U.S.C. §§ 271(a), (b) and (c).

129. TPC will be irreparably harmed if Defendants are not enjoined from Defendants' activities infringing the '409 patent. TPC does not have an adequate remedy at law and an award of damages would not make TPC whole.

**COUNT 8: INFRINGEMENT OF THE ’946 PATENT**

130. TPC restates, realleges, and incorporates by reference paragraphs 1–129 as if fully set forth herein.

131. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants’ proposed edaravone product, prior to the expiration of the ’946 patent.

132. On information and belief, Defendants’ proposed edaravone product infringes, literally and/or under the doctrine of equivalents, one or more claims of the ’946 patent, including at least Independent Claim 1 of the ’946 patent. For example, on information and belief, differences, if any, between the features of Defendants’ proposed edaravone product and the claims of the ’946 patent are insubstantial, and Defendants’ proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the products claimed in the ’946 patent.

133. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the ’946 patent by submitting 505(b)(2) NDA No. 221059 seeking approval of Defendants’ proposed edaravone product prior to the expiration of the ’946 patent listed in the FDA Orange Book.

134. On information and belief, Defendants intend to and will engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants’ proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

135. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants’ proposed edaravone product in the United States prior to the expiration of the ’946

patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’946 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

136. Defendants had actual and constructive notice of the ’946 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants’ proposed edaravone product.

137. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the ’946 patent or the later expiration of any patent term extension or exclusivity for the ’946 patent to which TPC is or becomes entitled.

138. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants’ proposed edaravone product within the United States, or import Defendants’ proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the ’946 patent under 35 U.S.C. §§ 271(a), (b) and (c).

139. TPC will be irreparably harmed if Defendants are not enjoined from Defendants’ activities infringing the ’946 patent. TPC does not have an adequate remedy at law and an award of damages would not make TPC whole.

## COUNT 9: INFRINGEMENT OF THE ’611 PATENT

140. TPC restates, realleges, and incorporates by reference paragraphs 1–139 as if fully set forth herein.

141. On information and belief, Defendants submitted and/or caused the submission of 505(b)(2) NDA No. 221059 to the FDA, seeking approval of Defendants’ proposed edaravone product, prior to the expiration of the ’611 patent.

142. On information and belief, Defendants’ proposed edaravone product infringes,

literally and/or under the doctrine of equivalents, one or more claims of the ’611 patent, including at least Independent Claim 1 of the ’611 patent. For example, on information and belief, differences, if any, between the features of Defendants’ proposed edaravone product and the claims of the ’611 patent are insubstantial, and Defendants’ proposed edaravone product performs substantially the same function in substantially the same way to obtain the same result as the products claimed in the ’611 patent.

143. Defendants have infringed, pursuant to 35 U.S.C. § 271(e)(2), literally and/or under the doctrine of equivalents, one or more claims of the ’611 patent by submitting 505(b)(2) NDA No. 221059 seeking approval of Defendants’ proposed edaravone product prior to the expiration of the ’611 patent listed in the FDA Orange Book.

144. On information and belief, Defendants intend to and will engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of Defendants’ proposed edaravone product upon receipt of final FDA approval of 505(b)(2) NDA No. 221059.

145. On information and belief, the importation, manufacture, offer to sell, sale, or use of Defendants’ proposed edaravone product in the United States prior to the expiration of the ’611 patent will infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’611 patent under 35 U.S.C. §§ 271(a), (b) and/or (c).

146. Defendants had actual and constructive notice of the ’611 patent prior to filing 505(b)(2) NDA No. 221059, seeking approval of Defendants’ proposed edaravone product.

147. TPC is entitled to entry of an order, pursuant to 35 U.S.C. § 271(e)(4), that the effective date of the FDA approval of 505(b)(2) NDA No. 221059 be a date that is not earlier than the expiration date of the ’611 patent or the later expiration of any patent term extension or

exclusivity for the ’025 patent to which TPC is or becomes entitled.

148. TPC is entitled to a declaration that, if Defendants commercially manufacture, use, offer for sale, or sell Defendants’ proposed edaravone product within the United States, or import Defendants’ proposed edaravone product into the United States, or induce or contribute to such activities, Defendants will infringe one or more claims of the ’611 patent under 35 U.S.C. §§ 271(a), (b) and (c).

149. TPC will be irreparably harmed if Defendants are not enjoined from Defendants’ activities infringing the ’611 patent. TPC does not have an adequate remedy at law and an award of damages would not make TPC whole.

**PRAYER FOR RELIEF**

**WHEREFORE,** TPC respectfully requests the following relief:

A. A judgment that Defendants have infringed each of the Patents-in-Suit pursuant to 35

U.S.C. § 271(e)(2) by submitting 505(b)(2) NDA No. 221059 to the FDA seeking approval of Defendants’ proposed edaravone product prior to the expiration of the Patents-in-Suit;

B. A declaration that the commercial manufacture, use, offer to sell, or sale within the United States, and/or importation into the United States, of Defendants’ proposed edaravone product described in 505(b)(2) NDA No. 221059 will infringe, induce, and/or contribute to the infringement of each of the Patents-in-Suit;

C. An order issued pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of 505(b)(2) NDA No. 221059 be a date not earlier than the expiration date of the last to expire of the Patents-in-Suit, including any patent term extensions and/or patent term adjustments and any additional periods of exclusivity to which TPC is or becomes entitled;

D. A preliminary and permanent injunction restraining and enjoining Defendants,

Defendants' directors, officers, agents, attorneys, affiliates, divisions, successors, and employees, and those acting in privity or concert with Defendants, from engaging in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of any drug product, or the use thereof, claimed in the Patents-in-Suit, before the expiration date of the last to expire of the Patents-in-Suit, including any patent term extensions and/or patent term adjustments and any periods of exclusivity, including ODE, to which TPC is or becomes entitled;

E. A declaration that this is an exceptional case and an award to TPC of its reasonable expenses, including attorneys' fees pursuant to 35 U.S.C. § 285;

F. An award to TPC of costs incurred in this action; and

G. Such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff Tanabe Pharma Corporation (f/k/a Mitsubishi Tanabe Pharma Corporation)*

OF COUNSEL:

Bryan C. Diner
Kenneth S. Guerra
Alexander E. Newkirk
Shivani Karthikeyan
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4431
(202) 408-4000

Chiaki Kobayashi
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
33rd Floor, Shiroyama Trust Tower 3-1,
Toranomon 4-chome
Minato-ku, Tokyo, JAPAN 105-6033
+813-3431-6943

Nao Takada
TAKADA LEGAL
2816 River Bend Place
Celina, Texas 75009
(214) 838-8083

Eric J. Marandett
Bryana T. McGillycuddy
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

January 21, 2026